BRADY *v.* WIEMER.

Opinion delivered February 26, 1917.

1. CONTRACTS—SEVERAL INSTRUMENTS—NOTE.—Where several instruments witnessing a contract were executed at different times, but were intended by the parties to be considered together, they will be so treated.

2. CONTRACTS—LOAN OF MONEY—TERMS—JURY QUESTION.—A. loaned money to B., he giving A. his note bearing 6% interest, but attached to the note a "rider" stating that it was agreed that B. pay a rate of interest greater than 6%. Correspondence between the parties was introduced tending to show their intention as to the rate of interest to be charged. *Held*, it was for the jury to determine the agreement between the parties as to the interest rate, and that the trial court properly submitted that issue.

Appeal from Sebastian Circuit Court, Ft. Smith District; *Paul Little*, Judge; affirmed.

*H. C. Mechem*, for appellants.

1. There was no evidence of consideration for the "rider" attached to the note or for any parol agreement made subsequent thereto. A past consideration furnishes no valid basis for a subsequent contract. 1 Beach on Cont., § 150, p. 192; 9 Cyc. 358; 37 Ala. 702; 36 Ohio St. 361, 369; 4 Ky. Law Rep. 348.

2. There was no proof that the parties mutually agreed on a higher rate than six per cent. The instructions were erroneous and prejudicial. 16 Ark. 308; 70 *Id.* 82; 80 *Id.* 457-8; 109 *Id.* 29.

*J. F. O'Melia*, for appellee.

1. The evidence shows that defendants agreed to pay 10 per cent. interest.

2. There is evidence that the parties mutually agreed on 10 per cent. and there is no error in the instructions.

3. A judgment will not be reversed upon the weight of evidence if there is any legal evidence to sustain the verdict. 57 Ark. 577; 15 *Id.* 540; 73 *Id.* 377; 75 *Id.* 111; 67 *Id.* 326.

STATEMENT BY THE COURT.

Appellee instituted this suit against the appellants alleging that on February 2, 1912, appellants executed their note to the appellee in the sum of $1,000, due in one year from date, with interest at 6 per cent. and that on February 9, 1912, they agreed in writing to pay her 10 per cent. on the note, under the following written contract:

"To whom it may concern: The rate of interest in this note is six per cent., but this comes to me at a time I need it and I agree to pay such premium for the use of this money as may be mutually agreed on, which rate shall be in excess of the amount named in this note. "Lawrence, Kans., Feby. 9, 1912.

(Signed)   J. L. BRADY."

The answer admits the execution of the note, but denies the execution of the writing as to premium for the use of the money. Alleged that on February 17, 1913, appellee gave J. L. Brady her note for $100, payable ninety days after date, with interest at 6 per cent., which had not been paid. Denied that anything was due appellee and alleged that she owed appellant J. L. Brady, and asked to off-set the $100 note.

The reply of the appellee denied that the appellee owed the $100 note set up in the answer.

The testimony on behalf of plaintiff tended to show that she lived in Peoria, Ill. Her brother, J. L. Brady, lived at Lawrence, Kansas. Her brother wrote her that he would have to borrow $1,000, and asked if she could let him have it soon. She found out that she could get 10 per cent. for the $1,000 by making a farm loan. Her brother was asking her to let him have it at 6 per cent. She wrote him that she could not let him have it unless he paid her 10 per cent. interest. She did not hear from him at once and in about ten days she made the farm loan at 10 per cent. In a few days she got a letter from him stating that he would have to have so much money at that time and asked her to let him have the $1,000, and stating in the letter that he could not afford

to pay more than 6 per cent. She replied, telling him how she was situated, and that she could not afford to and would not let him have the $1,000 unless he paid her 10 per cent. He wrote, stating that he was compelled to have the money, and asking her to send it by the first mail, and stating that he would only pay 6 per cent. She answered that she would not put up the money unless he would pay 10 per cent. So the next morning he sent her a telegram and said he was in trouble and that he must have the $1,000 by the first mail. "I took it," says the witness "that he meant to comply with my terms. I did not have the $1,000 and went out and borrowed the money and sent it to him. It was nearly two weeks before I heard from him, and I wrote him several times, and when I wrote him to send the note to be at 10 per cent., signed by himself and Lee (Mrs. Brady) he sent the note in suit. I told him that I could not accept it and would not because he agreed to pay me 10 per cent. by admitting in sending the telegram that this was his agreement, to pay me 10 per cent. Attached to the note was a slip of paper which he said fully explained itself, and further stated that the rate of interest in Kansas was not ten per cent., and that if anything happened it might put me to some trouble and that this explained it fully as to the rate of interest. I kept the note about a month and returned it and asked as to why he made it that way, and he sent it back to me with just about the same statement that he had made before. He stated in his letter returning the note that this statement which he had pinned on the note was put in there for my protection. There is still due me on the note at 10 per cent. $514.15, and at 6 per cent $388.17."

The testimony on behalf of the appellants, by J. L. Brady, tended to show that he borrowed $1,000 February 2, 1912; that nothing was said about the interest at the time and he put it at the legal rate in his State. Appellee wrote that he would have to pay her more. He wrote that he would be glad to pay her according to benefits received. He attached the rider on the note.

He exhibited checks payable to the appellee dated between February 2, 1913, and February 15, 1914, amounting to $500; and checks were introduced, signed by Mrs. Brady, in favor of the appellee, bearing the appellee's endorsement, dated between July and December, 1914, amounting to $500; and some smaller checks. He testified that plaintiff was overpaid the sum of $18.48.

Appellants introduced a letter which was post marked "Havana, Cuba, November 20, 1914," in which the appellee stated that she wanted the entire balance due on the note paid in one payment, January 10, 1915, with interest at 7 per cent. In this same letter she complains that he had refused to pay her what she asked for it, and that the money was long past due, and that she had directed that suit should be brought, and stated that she regretted it, but that she had done all in her power to prevent it, but that her brother, J. L. Brady, had positively refused to pay, saying in one of his letters that forty telegrams would not get the money. In this letter she stated that "if pleadings and telegrams would not get the money there was nothing left for her to do but to go to law. She concludes the letter by saying "no matter what business necessitates, you are still my brother and I shall ever love you."

The court, among others, instructed the jury as follows:

"If you believe that the defendant J. L. Brady signed the agreement to pay plaintiff a premium for the use of this money, which rate shall be in excess of six per cent. named in the note, then you should find a verdict for plaintiff for such amount as the evidence shows he agreed to pay, if any."

And further, "That the note in suit bears interest at six per cent. per annum and the calculation of interest must be made at that rate unless the testimony shows a mutual agreement to pay a higher rate, and you are charged that a higher rate than ten per cent. cannot be enforced, and the burden is on the plaintiff to show an agreement."

. The appellants requested a peremptory instruction in their favor, and also presented prayers for instructions in effect telling the jury that the writing attached to the note was not a contract to pay 10 per cent. interest or any other rate and was not enforceable, and that the jury could not consider it in determining the amount to be paid on the note in suit; that the note in suit bore interest at six per cent. per annum, and that the calculation as to the amount of interest due the appellee, if any, had to be made at that rate.

The court granted appellants' prayer to the effect that if the $100 note signed by the appellee was not paid that the amount due thereon, with interest, should be credited on the $1,000 note sued on.

The verdict and judgment were in favor of the appellee in the sum of $235.75, and this appeal is duly prosecuted.

WOOD, J. (after stating the facts).

(1) Appellants contend that there was no consideration for the writing attached to the note which appellant J. L. Brady designates as a "rider." But the note and the "rider" and the letters concerning this, written before the execution of the note and "rider," should all be considered in determining as to what the contract was between the appellants and the appellee as to the loan of money and the rate of interest to be paid therefor.

In *Mann* v. *Urquhart*, 89 Ark. 239, we held that where several instruments witnessing a contract were executed at different times, but were intended by the parties to be considered together, they will be so treated. See also *McDonough* v. *Williams*, 77 Ark. 261.

(2) The correspondence between the appellee and appellant, as well as their testimony, shows the circumstances under which the note and "rider" were executed, and that they were really but parts of one transaction which was consummated by the loan of the money by the appellee to the appellants. The loan of the money was the consideration for the "rider" as

well as the note. The recitals of the "rider" show that the appellants agreed to pay a premium for the use of the money in excess of the amount named in the note.

Under the evidence it was a question for the jury to determine as to what the agreement was between the parties as to the rate of interest that the loan should bear, and the court did not err in submitting that question to the jury.

Learned counsel for appellants insist that there was no evidence of a mutual agreement between the parties for some higher rate of interest than six per cent. But the testimony of the appellee tends to show that she demanded of the appellants interest at 10 per cent. before the note and "rider" were executed, and the jury were warranted in finding that appellants accepted this offer and impliedly agreed to pay her 10 per cent. as evidenced by appellant J. L. Brady's telegram and letters requesting her to send him the money. Since appellants had been informed that appellee would not loan the money for less than 10 per cent. per annum, when the appellant J. L. Brady wrote and telegraphed appellee to send the money, the jury were warranted in inferring that he accepted the money on the terms that appellee proposed.

Upon the whole, we find no error in the instructions prejudicial to the appellants, and the question as to what amount, if any, was due to the appellee was, under the evidence, for the jury. The issues were correctly submitted, and there was evidence to sustain the verdict. The judgment is therefore affirmed.